# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN P. CONTO,                                    Civil Action No.  05-1509

        Plaintiff,

    vs.                                            Judge Hardiman

NORFOLK SOUTHERN CORPORATION

        Defendant.                              JURY TRIAL DEMANDED

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Samuel J. Cordes
John E. Black, III

Pa.I.D. #54874 (Cordes)
Pa. I.D. #83727(Black)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

## I. Introduction

Brian Conto is a mechanic.  Prior to learning how to become a mechanic, Conto worked as an unskilled laborer.

Conto also has a significant medical history.  Specifically, Conto had a liver transplant in 1989 and is still on a variety of medications that allow his liver to function.  Conto also has a history of back pain.  In order to function as a mechanic with his back pain, Conto is on a low dosage of narcotic pain medication.

In the late fall of 2004, Conto applied for a machinist position with Defendant.  A machinist essentially does similar work to what Conto did when he applied. Defendant did not make Conto a conditional job offer, but conducted an extensive inquiry into his medical history, including a medical examination.   Once Defendant had Conto's medical history in its possession, it  asked Conto's doctor about his liver transplant and back pain. Conto's doctor explained that Conto could do the functions of a mechanic despite being on a low dosage of narcotic medication.  Defendant was still not satisfied. Defendant talked to Conto's doctor.  Again, Conto's doctor told Defendant  Conto could perform the job functions.

Defendant told Conto's doctor he would not be hired because Defendant had a strict policy prohibiting people on narcotics from working on its engines.  Likewise, Defendant told Conto himself that he would not be hired because he was on prescription narcotic medication and would have to work with tools and at heights.  Defendant told both Conto and his doctor that he may be eligible to apply again if he could "get off" the narcotic medication for a period of time.  However, Conto learned from Defendant's shop manager that the position had been filled at least a week before.

More than a month after Defendant had all of Conto's medical information and weeks after it already had hired someone, Defendant told Conto a  "conditional offer of employment" had been rescinded because Conto had not provided accurate information. Defendant has now moved for

1

summary judgment.  Defendant is not entitled to summary judgment.[1]

## II. Argument

### A.    Summary Judgment Is Inappropriate Because Defendant's Credibility and Intent Are Factual Issues.

Summary judgment in an Americans with Disability ("ADA") case is proper only if the defendant persuades the court no reasonable jury could find in the plaintiff's favor, even if all inferences that can be drawn from the record evidence are viewed in a light most favorable to the plaintiff.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-151, 120 S. Ct. 2097, 2110 (2000); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 186 (3d Cir. 2003).  Evidence of the non-moving party is to be believed, and evidence supporting the moving party is to be given credence *only* when uncontradicted, unimpeached, and offered by disinterested witnesses. Reeves, 530 U.S. at 151, 120 S. Ct. at 2110;  Hill v. City of Scranton, 411 F.3d 118, 129 n. 16 (3d Cir. 2005).

### B.    The Framework for Proving an ADA Case of Discrimination

The ADA, in relevant part,  provides that no covered entity shall discriminate against a qualified individual with a disability because of that individual's disability in regard to job application procedures and/or hiring. 42 U.S.C. §12112(a).  The ADA also prohibits an employer from making inquiries about the disability of an applicant  during the pre-offer phase of the job application procedure. 42 U.S.C. §12112(d)(2)(A).

To state a *prima facie* case of disability discrimination under the ADA, Conto must  point to evidence showing  (1) he is a qualified individual with a disability; (2) he applied for the machinist position in 2004,  and was otherwise qualified for that  position; (3) despite his qualifications, he was rejected and (4) after his rejection, the position either  was filled by a non-disabled individual, remained open, or Defendant continued to seek applicants. Olson v. General Elec. Astrospace, 101 F.3d 947, 951

---

[1] As a preliminary matter Defendant's motion should be treated as a partial Motion for Summary Judgment. Plaintiff in accordance with this court's order,  filed an Amended Complaint alleging discrimination under the Pennsylvania Human Relations Act. Defendant has not move for summary judgment on that claim and a review of the docket shows Defendant has not even answered the Amended Complaint.

(3d Cir. 1996); Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002).

If Conto states a *prima facie* case, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for its adverse employment decision. Fastold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005); Shellenberger, 318 F.3d at 187. If Defendant articulates a reason, Conto survives summary judgment if he presents evidence that discredits the proffered reasons, either circumstantially or directly, or offers evidence, whether direct or circumstantial, that discrimination was a motivating or determinative cause of the adverse action. Fastold, 409 F.3d at 185, *citing* Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994).

### C.      Defendant Does Not Appear to Contest the Majority of Conto's *Prima Facie* Case.

Defendant does not contest Conto applied for the machinist position and that he was otherwise qualified for the Machinist position. Nor could it because Defendant claims it found Conto qualified enough to give him a conditional offer of employment. (Def.'s Facts ¶24).[2] Accordingly, Conto has met the second prong of his *prima facie* case.

Likewise, there is no dispute Defendant rejected Conto for the machinist position and filled the machinist position after Conto applied.  (Plt.'s Facts ¶163). Thus, Conto has also satisfied the third and fourth prongs of his *prima facie* case.  Accordingly,  Conto can satisfy the remaining element of his *prima facie* case by showing that there are factual issues regarding whether he is a "qualified individual" with a disability.

### D.      Conto Can Show He Was a Qualified Individual with a Disability.

Defendant contends Conto can not show he is a qualified individual with a disability . (Def.'s Brief at 5). Defendant is wrong.  Under the ADA, a "qualified individual" with a disability is a person with a disability who, with or without reasonable accommodation, can perform the essential functions

---

[2]Defendant's Statement of Facts will be cited as "Def.'s Facts" and Plaintiff's Statement of Facts will be cited as "Plt.'s Facts."

of the employment position that such individual desires. 42 U.S.C. §12111(8). A disability is defined as (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; or (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2); <u>Williams v. Philadelphia Housing Authority</u>, 380 F.3d 751, 762 (3d Cir. 2004).

Whether an individual has a disability under either of the three definitions is a question of fact. <u>Williams</u>, 380 F.3d at 763. Here, Defendant regarded Conto as having a physical impairment (his back and liver conditions) that substantially limited his ability to perform the major life activity of working. Thus, on a summary judgment record, this Court must first determine whether any genuine disputes of material fact exist on whether Defendant regarded Conto as substantially limited in his ability to work. Even if no factual disputes exist, the Court must then view the evidence in the light most favorable to Conto, and decide whether Defendant is entitled to judgment as a matter of law on that issue. <u>Williams</u>, 380 F.3d at 758. Here, a reasonable jury could conclude Conto is disabled because on this record it could find Defendant regarded him as having an impairment that substantially limited Conto from working.

A person is "regarded as" having a disability if the person: (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; or (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment. <u>Williams</u>, 380 F.3d at 766, *quoting* 29 C.F.R. §1630.2(1). Conto's claim is grounded in the first definition because he had physical impairments that did not limit his ability to work in a broad range or class of jobs. However, Defendant regarded those impairments as ones that substantially limited him from doing so.

4

### 1.    Conto has physical impairments under the ADA.

Under the ADA a physical or mental impairment includes (a) any condition affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine. 29 C.F.R.§ 1630.2(h).

Here, Defendant does not appear to dispute that Conto's back condition is an impairment within the purview of the ADA.  Nor could it.  *See*, Marinelli v. City of Erie, 216 F.3d 354, 360 (3d Cir. 2000)(plaintiff with ongoing residual neck and arm pain from an accident is a 'condition' that affected musculoskeletal system, and thus an impairment.)   Plant v. Morton, Int'l, 212 F.3d 929, 937 (6th Cir. 2000)(holding a "back strain" was an impairment for ADA purposes).

Much like Marinelli, Conto has residual back pain from a motor vehicle accident as well as because he works in a laborer intensive position as a mechanic. (Plt.'s Facts ¶¶33, 91). This back pain requires Conto to take a low dosage of narcotic medication, so he can function as a mechanic and in his daily life without pain. (Plt.'s Facts ¶135). The type of medication Conto can take for his back pain is also limited because of his post-liver transplant condition and the medication that Conto needs to take for that condition.  (Plt.'s Response to Def.'s Facts ¶76).[3]

### 2.    In determining whether Conto was regarded as substantially limited by his impairments any corrective measures must be considered.

In evaluating whether Conto's impairment substantially limit him in performing a major life activity one must take into account any corrective or mitigating measures Conto has taken with respect to these impairments. *See* Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139 (1999); Murphy v. United Parcel Service, Inc., 527 U.S. 516, 119 S.Ct. 2133 (1999); Albertson's, Inc. v.

---

[3]Conto's post-liver transplant condition is also an impairment because his new liver does not function properly without medication. (Plt's. Facts  ¶23).  *See also* Furnish v. SVI Systems, 270 F.3d 445, 449 (7th Cir. 2001). However, Conto does not argue this impairment impacts him other than what pain medications Conto can take.

Kirkinburg, 527 U.S. 555, 119 S.Ct. 2162 (1999). In making this determination, *the mitigating measures the employee uses must be taken into account*, however, the Supreme Court cautioned that it *must not overlook the side effects of the mitigating measures, as those can themselves be impairing*. Sutton., 527 U.S. at 484, 119 S.Ct. at 2147; Murphy., 527 U.S. at 521, 119 S.Ct. at 2137 (negative side effects of hypertension medication might substantially limit a major life activity, but not reaching issue because petitioner did not seek certiorari on it).

Third Circuit has recognized side effects or other collateral limitations caused by corrective measures must be considered in determining whether someone is substantially limited in a major life activity. Fiscus v. Wal-Mart, 385 F.3d 378, 385-86 (3d Cir. 2004). Here, to treat his back pain Conto takes narcotic pain medication. (Plt.'s Facts ¶135). This narcotic pain medication allows Conto to perform the functions of a mechanic and function in his daily life. Moreover, Conto is limited in what medications he can take for his back because his post-transplant liver condition makes him difficult to medicate. (Plt.'s Response to Def.'s Facts ¶76). Thus, in evaluating whether Defendant regarded Conto as substantially limited in performing a major life activity the Court must consider his impairments in the context of the corrective measures and how Defendant regards such corrective measures– like narcotic medication. *See* Fiscus, 385 F. 3d at 385-386.

> **3.    Defendant's Blanket Exclusionary "No Narcotic Drug Use" Violates the ADA and Raises Material Issue of Fact of whether Defendant Regarded Conto as substantially limited in his ability to work.**

Here, Defendant bans the use of chronic narcotic pain medication (Conto's mitigating measure) by all employees except those in certain "desk type" jobs. (Plt.'s Facts ¶¶ 167-168). Defendant would disqualify any such employees in "non desk-type" jobs from employment even if they need narcotic medication to be able to perform the functions of their job. (Plt.'s Facts ¶ 173). Such a blanket

exclusionary provision runs afoul of individualized assessments required by the ADA.[4]  Rather, the ADA mandates heightened scrutiny of blanket exclusionary provisions and generally discourages them. Bombrys v. City of Toledo, 849 F.Supp.1210, 1219-20 (N.D.Ohio 1993).  Instead, individualized assessments should be invoked to further one of the purposes of  the ADA-protecting people with disabilities from unfair and inaccurate stereotypes.  Bombrys, 849 F. Supp. at 1216; Anderson v. Little League Baseball, Inc., 794 F.Supp. 342, 345 (D. Ariz. 1992).

In E.E.O.C. v. Chrysler Corp., plaintiff was offered a position as an electrician, conditioned on his passage of a medical examination.  917 F.Supp. 1164, 1165 (E.D.Mich. 1996) rev'd, 172 F.3d 48 (6th Cir. 1998) (reversed on other grounds as record contained an issue of fact that precluded the plaintiff from summary judgment on the issue as to whether Defendant regarded him disabled).  During the medical examination, plaintiff's blood level was determined to be too high. Id. Subsequently, Plaintiff's treating physician, Dr. Berger, diagnosed him with Type II diabetes.  Id.  Dr. Berger regularly treated plaintiff and informed defendant that plaintiff was able to work without restriction. Id. at 1166. Disregarding Dr. Berger's recommendation, defendant withdrew its offer of employment stating plaintiff's blood sugar level was too high, i.e. it was greater than defendant's required140 mg/dl level. Id.

Plaintiff argued defendant's blanket "blood sugar level" exclusionary provision violated the ADA.  Id. at 1173.  See Stillwell v. Kansas City, Mo.Bd. of Police Comm'rs, 872 F.Supp. 682, 687 (W.D. Mo. 1995) (holding blanket provision excluding persons with one hand as armed security guards violates the ADA);  Bombrys, 849 F.Supp. at 1220. (blanket exclusion preventing insulin-dependent

---

[4] Galloway v. Superior Court of the District of Columbia, 816 F.Supp. 12, 19 (D.D.C. 1993) (Categorical exclusion of all blind persons from jury service violated the ADA); Coleman v. Zatechka, 824 F.Supp. 1360, 1372 (D.Neb. 1993) (University's blanket policy precluding assignment of roommates to students with disabilities violated ADA); Anderson v. Little League Baseball, Inc., 794 F.Supp. 342, 345 (holding blanket policy of prohibiting coaches in wheelchairs from being on the field violates the ADA; baseball league needs to make individualized assessments).

diabetics from becoming police officers violated ADA).  Id at 1173.  ***The court held defendant's blanket policy violated the ADA because it failed to afford individual job applicants with an appropriate individualized assessment.***  Chrysler Corp., 917 F.Supp. at 1173.

Similarly, here, Defendant's blanket exclusionary narcotic medication provision  effectively undermined the ADA.  Because of Defendant's policy, Conto, a prospective job applicant who takes legally prescribed, low dosage narcotic medicine to treat his back pain, was categorically  ruled ineligible for employment without ever being afforded an individual assessment to determine his *actual* ability to do the job.  Id. at 1172-73.  *See* (Plt.'s Facts ¶176-178).  Such an individual assessment of Conto's ability to perform the position was clearly possible in this case given that Defendant could have performed a functional capacity test with an alertness component on Conto to assess his actual ability to do the job while on low dosage narcotics.  *See* (Plt.'s Facts ¶176-178).

The appropriate inquiry in this case is whether Conto can perform the duties of a machinist, *not* whether he takes legally prescribed, low dosage narcotic medication.  *See* Stillwell, 872 F.Supp. at 687(to determine if an individual with one hand is qualified for a police officer job position, appropriate inquiry must be whether applicant can perform the duties of a police officer, not whether applicant has two hands).

> a.   **Defendant has failed to show how Conto's use of legally prescribed, low dosage narcotic medicine posed a direct threat to workplace safety.**

Defendant also claims it bans narcotics place because of safety reasons and concerns about the potential for an accident or incident. (Plt.'s Facts ¶174). In Chrysler Corp., defendant said it revoked plaintiff's offer of employment because plaintiff's elevated blood sugar level posed a "direct threat" to the health or safety of other workers.[5]  917 F.Supp. at 1170.  Despite defendant's "ominous predictions"

---

[5]Notably, the direct threat provision to the ADA is an affirmative defense.  Sista v. CDC Inis, 445 F.3d 161, n.3

(continued...)

8

of plaintiff suddenly losing his vision, falling from an elevated place, and landing on top of another co-worker and other hypothetical dangerous occurrences stemming from plaintiff's potential impaired vision, defendant presented no evidence to support its "direct threat" defense.  Id.

Determining whether an individual poses a *"direct threat" requires an individualized assessment of the individual's ability to perform safely the essential functions of the job*.  Chrysler Corp., 917 F.Supp at 1172; 29 C.F.R. § 1630.2 r.  As Defendant failed to perform an individualized assessment of plaintiff, defendant presented no actual evidence that plaintiff was a "direct threat" to himself or others.  Chrysler Corp., 917 F. Supp at 1172.

Here, Defendant feared Conto's use of legally prescribed, low dosage narcotic medicine posed a safety risk and might lead to an incident or accident. (Plt.'s Facts ¶174).  Put simply, since Conto takes a legally prescribed, low dosage narcotic medication, he was categorically denied any opportunity to work in a variety of positions for Defendant. Defendant also failed to conduct an individualized assessment whether Conto posed any safety threat.  Chrysler Corp., 917 F. Supp at 1172.

The evidence in this case suggests just the opposite-Conto did not pose any threat.  Dr. Cook, Conto's treating physician, preformed an individualized assessment of Conto and stated Conto had been remarkably stable for the past several years; he had not missed a single day of work in the past year to back pain; he had not shown any signs of over-dependence on the medication; he had worked consistently as a mechanic-the back pain and narcotic medication would not limit Conto's ability to work, including as a mechanic.  (Plt.'s Facts ¶132-144).

---

[5](...continued)
(3d Cir. 2006); Laysor v. Morrison, 935 F.Supp. 562, 569 (ED. Pa. 1995).  Although, Defendant has rationalized that the blanket narcotic policy is in place for safety purposes during this litigation and does not dispute that it considered Conto medically ineligible to be a machinist because he was on prescription medication well before it "administratively disqualified" him,  Defendant has not raised this affirmative defense in its pleadings or in its Motion for Summary Judgment and accompanying brief.

>        3.      **There is also record evidence Defendant perceived Conto as substantially limited in his ability to work.**

As Conto can show he has physical impairments as defined by the ADA, Conto survives summary judgment on the first element of his *prima facie* case if he can show Defendant perceived those impairments, with any corrective and mitigating measures, as substantially limiting his ability to work.

Working is a major life activity under the ADA.  *See* Williams, 380 F. 3d at 762-763.  Here, Conto can show that Defendant regarded him as substantially limited in his ability to work.   To make such a showing, Conto must only show Defendant regarded him as unable to perform *either* a class of jobs or a broad range of jobs as compared to the average person having comparable training, skills, an abilities. Williams, 380 F.3d at 762-63, 767; *See also*, 29 C.F.R. 1630.2(j)(3)(i).    Conto does so by offering evidence Defendant did not believe he could do a class of jobs or broad range jobs for Defendant. Williams, 380 F.3d at 762-63, 767; Moorer v. Baptist Memorial Health Care System, 398 F.3d 469, 484 (6th Cir. 2005).  Evidence Defendant believed Conto could not perform a broad range or class of jobs for Defendant  is competent evidence of Defendant's belief Conto could not perform those jobs elsewhere. Id; *see also*, Taylor v. Pathmark Stores, Inc. 177 F.3d 180, 188 (3d Cir. 1999)(statement by the manager Plaintiff was unable to perform any job in the store sufficient to show employer regarded employee as incapable of performing a wide range of jobs); Chrysler Corp., 917 F.2d at 1168-69(Plaintiff regarded as disabled from working by employer when evidence showed that because Plaintiff failed a  medical exam he would also have been prohibited from working for the employer in a broad range of skilled trade jobs).[6]

Although, Defendant claims it did not hire Conto because he was untruthful during its medical

---

[6] The district court in Chrysler Corp., actually held as matter of law that Defendant regarded Plaintiff as disabled from working. Chrysler Corp. , 917 F.2d at 1169. However, in an unpublished opinion the Sixth Circuit reversed, finding only that there was an issue of fact as to whether the Defendant regarding Plaintiff as disabled. Chrysler Corp., 172 F.3d at 48.

inquiries, Defendant does not deny it had already determined Plaintiff was not medically qualified to work for Defendant as machinist. (Def.'s Facts ¶ 62-63, 71); (Plt.'s Response to Def.'s Facts ¶63). This is just not a case where Defendant simply found Conto unable to perform a discrete position. (Def.'s Brief at 12-13). Here, evidence suggests Defendant perceived Conto as being incapable of working both a class of jobs and broad range of jobs, not just the machinist position.  Indeed, Defendant admitted as much both during the hiring process and in this litigation.  Defendant's ban on prescription narcotic medication not only precludes Conto from working as a machinist, the position he sought, but also precludes Conto from working in ***all "non-sedentary" positions*** and all "***safety-sensitive***" positions with Defendant. (Plt.'s Facts ¶¶164-165, 167).  These classes of positions include any positions with Defendant that are "physically demanding."  (Plt.'s Facts ¶¶166, 168).  Indeed, the only positions  not covered by this narcotic ban are certain "desk type" jobs. (Plt.'s Facts ¶168).

Moreover, Defendant also told Conto and his doctor that because Conto used prescription narcotic medication  he could not do a wide range of tasks Conto was specifically trained for and did on a daily basis. (Plt.'s Facts ¶139). Dr.  Lina told Dr. Cook that Defendant's narcotic policy prohibited people on chronic pain medication from working on Defendant's engines. (Plt.'s Facts ¶143).  Similarly, Dr. Lina told Conto he was not being hired because he was on narcotic pain medication and would be required to work at elevated locations and with tools. (Plt.'s Facts ¶¶151-152).  Moreover, Defendant's medical director, Dr. Prible testified that people should not work on engines *or* with tools within six hours of using narcotic medication. Defendant's narcotic policy would prohibit Conto from doing *any* skilled trade or work requiring physical labor. *See* (Plt.'s Facts ¶¶167-168).

Since the Defendant believed Conto was incapable of performing *any* "safety sensitive" positions and *any* "non-sedentary" positions, a reasonable jury could certainly conclude  Defendant perceived Conto as being incapable of performing two (large) classes of positions. *Cf.*  Williams, 380 F.3d at 766. (Defendant's perception plaintiff could not perform any law enforcement position, because

11

he was prohibited from carrying a firearm, due to a mental impairment, was sufficient to show employer perceived plaintiff as unable to work a class of positions).  Moreover, given the manner Defendant defines "non-sedentary" and "safety sensitive" positions, a reasonable jury could  find Defendant also perceived Conto as unable to do a broad range of jobs.  Indeed, Conto is prohibited by Defendant from doing *any* position requiring skilled trade work or "physically demanding" work and would be restricted to a "desk-type" job.  *See* (Plt.'s Facts ¶¶167-168).  Given Conto's limited education, and work experience that is limited to the mechanical trade and work as a laborer, a reasonable jury could certainly find Defendant found Conto significantly restricted (if not absolutely restricted) from performing any of jobs compared to an average person of similar training, skills and abilities.  *See* Williams, 380 F.3d at 751 *citing* CFR 1630.2 (j)(3)(i). *See also*, Chrysler Corp., 917 F.Supp. at 1168-1169; Taylor, 77 F.3d at 188.

Since a reasonable jury could conclude Defendant regarded Conto as substantially limited in his ability to work because Conto used prescription narcotics to treat his chronic back pain, Conto can show he is an qualified individual with a disability, and Plaintiff has satisfied his *prima facie* case of disability discrimination.

### E.    Conto Can Show Defendant's Reasons for Not Hiring Him Are Pretext.

Since Conto can state a *prima facie* case of disability discrimination, he survives summary judgment if he presents evidence that discredits Defendant reasons for not hiring him, either circumstantially **or** directly, or offers evidence, whether direct or circumstantial, that discrimination was a motivating or determinative cause of the adverse action.  Fastold, 409 F.3d at 185. Conto can offer both types of evidence.

### 1.    There is evidence that Defendant did not hire Conto because it regarded him as substantially limited in his ability to work.

As previously discussed, Dr. Lina told both Conto and Dr. Cook that Conto was not being hired

because he was on narcotic prescription medication and Defendant had a ban on such medication. (Plt.'s Facts ¶¶145, 151);  (Def.'s Brief Section D-E). Dr. Lina made these statements even after being advised by Dr. Cook that Conto's use of low doses of narcotic medication would not prevent Conto from working as a mechanic.[7] Dr. Lina was involved in the decision not to hire Conto, indeed she claims she determined Conto was not medically fit for the position and claims to have recommended Conto for administrative disqualification based on Conto's dishonesty. As some one involved in the decision not hire Conto, Dr. Lina's statements are strong circumstantial evidence of discrimination and "highly relevant." Abrams v. Lightolier, 50 F.3d 1204, 1215 (3d Cir. 1994). Certainly, Dr. Lina's statements read in the light most favorable to Conto could allow a jury to infer Defendant did not hire Conto for the machinist position because it regarded him as substantially limited in his ability to work both as mechanic and in a broad range of positions.

### 2.    Conto also casts doubt on Defendant's reasons for not rejecting him.

Summary judgment should also be denied because Conto can point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Defendant's reason for not hiring him.  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005 ).  Here, Defendant reasons have evolved and inconsistencies and contradictions abound in Defendant's explanations for its actions.

### a.    Defendant's reasons for not hiring Conto have evolved.

If a plaintiff demonstrates the reasons given for the employer's employment action did not remain consistent, beginning when proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext. Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 284 (3d Cir. 2001).  Defendant presently contends Conto was rejected because he was

---

[7]Dr. Lina also testified that Defendant's policy prohibited the use of narcotics by *all* employees except those with certain "desk-type" jobs.  (Plt.'s Facts ¶¶167-168).  Dr. Lina also testified she found Conto medically unable to perform the essential functions of the machinist position primarily *because of Conto's use of chronic pain medication*. (Plt.'s Facts ¶151).

deceitful in its pre-employment process. (Def.'s Brief ¶ 12-13).  However, Defendant's explanations for rejecting Conto have evolved into that reason.

Indeed, on January 5, 2006, Dr. Lina told Dr. Cook that Conto was rejected because Defendant had a strict narcotics policy banning people on narcotic medication from working on their engines. (Plt.'s Facts ¶ 143).  Likewise, Sally Heath, Medical Standards Coordinator, told Bridget Conto on January 25, 2005, that Conto had been disqualified for "medical reasons" and inquired whether Conto had received the letter disqualifying him. (Plt.'s Facts ¶¶ 147-148).  That same day Dr. Lina told Conto he was not hired because of a ban on prescription narcotic medication and  Conto would be working with tools and at heights.  Similar to what she told Dr. Cook, on January 25th, Dr. Lina also told Conto Defendant may have a job for him if he got off the narcotic medication for a period of time. (Plt.'s Facts ¶¶ 152-154).

However, when Conto called the shop manager, Tony Stuart, at Conway to inquire whether any positions were still open, Conto was told  the machinists positions were filled the week before and there was no work for him. Conto was not told he was rejected for alleged dishonesty in Defendant's alleged "pre-employment process" until a letter dated February 9, 2005 authored by Philip Piserchia, Defendant's Director of Employment. (Plt.'s Facts ¶ 160).

At the time of Piserchia's letter, Defendant had already told Conto (or representatives on his behalf) three times that he was not being hired for "medical reasons."  Further, the machinist position had been filled well before Defendant allegedly finalized its decision to "rescind" Conto's job offer based on dishonesty, and a week before Defendant even told Conto he was not being hired for the "medical reasons" related to his use of prescription narcotics. (Plt.'s Facts ¶¶ 151-157, 162).

Because Defendant's reasons for rejecting Conto have shifted, a reasonable jury could conclude Defendant's contention it did not hire Conto for being dishonest in that pre-employment process is pretextual.

14

**b.** **Defendant tried to justify its employment action well after it already to hired someone else.**

The circumstances surrounding why and when Conto was sent the letter rescinding Defendant's alleged "conditional offer of employment" may also raise the suspicions of the jury as to Defendant's real reasons for not hiring Conto. (Plt.'s Facts ¶160). Piserchia sent the letter to Conto and claims he reviewed and approved the decision to rescind Conto's alleged conditional offer of employment. (Plt.'s Facts ¶160). However, Piserchia was unable to say what information he reviewed; who he discussed the decision with, or even what specific information caused Conto to be disqualified for working for Defendant–other than it was something that happened with medical. (Plt.'s Facts ¶160). Nor can Piserchia say when the decision was made or explain why Conto was not notified of the decision until more than a month after Defendant contends it made the recommendation to disqualify Conto for administrative reasons. (Plt.'s Facts ¶160).

Piserchia also claims the employing officer, Tony Stuart, should not have known Conto's offer was disqualified for employment until after Piserchia sent the letter to Conto because the decision would not have been final until Piserchia approved it. (Plt.'s Facts ¶160). However, Stuart had filled the machinist positions weeks before Piserchia revoked Conto's alleged conditional offer of employment.

Given that all the machinist positions at Conway were filled well before Piserchia sent the February 9, 2005 letter to Conto, a reasonable jury certainly could conclude that Conto was rejected for one of those machinist positions for something other than the dishonesty based reasons contained in Piserchia's February 9, 2005 letter. Indeed, when Stuart filled all the positions at the Conway location with people other than Conto, Stuart would not have even known that Conto was disqualified for not providing accurate information to Defendant, since such a decision had not even been finalized. *See* (Plt.'s Facts ¶160). Accordingly, a reasonable jury could conclude that Piserchia's letter was simply an

after-the-fact justification for an employment decision Defendant made weeks before for an impermissible reason.

Also, if the jury believes Conto's testimony that Stuart told him he had filled all the machinist positions well before Piserchia informed Conto his "conditional offer of employment" was rescinded, a factfinder could conclude Conto was never given a conditional offer.  Indeed, such evidence undermines Stuart's contention that he did not fill the very position he claims he had conditionally offered to Conto with an alternate candidate until after he learned that Conto had been administratively disqualified from employment. (Plt.'s Facts ¶157).  Stuart could not have learned Conto had been administratively qualified when he filled all the machinists positions in mid-January since such a decision had not yet been made. (Plt.'s Facts ¶160).  This evidence coupled with Stuart's inability to say when he learned Conto was administratively disqualified or even the identity of the alternate person he allegedly hired to replace Conto, could allow a jury to disbelieve Stuart ever made Conto a "conditional offer" as well as question why Conto was not hired.

### c. Plaintiff can cast doubt on Plaintiff's claim that Conto was dishonest and that such dishonesty motivated Defendant not to hire him.

Inconsistencies and contradictions in Defendant's current claim that it did not hire Conto because he was dishonest in the pre-employment also preclude summary judgment. Indeed, there is evidence to allow a jury to believe to disbelieve any dishonesty by Conto *actually motivated* Defendant's decision not to hire him.

Conto contradicts many of Defendant's claims that he lied to him in its alleged pre-employment process. First, Conto never told Dr. Moon in the physical exam he was not treated for his back condition. Moon never asked him. (Plt.'s Facts ¶98). Likewise, Conto never told Dr. Lina why he was taking the prescription narcotic medication for kidney stones, as she claims, when she inquired into whether he had a valid prescription for narcotics. (Plt.'s Response to Def.'s Facts ¶44).

16

Conto also had little motive to lie regarding the use of his narcotic pain medication for his back, as Defendant admits Conto would have not known there was <u>any</u> policy prohibiting from such legal use of chronic pain medication. *See* (Plt.'s Facts ¶183).

Moreover, Conto provided numerous answers on the Form Med-15 regarding his medical history, including that he had a history of back pain and his liver transplant. Had Conto truly wanted to deceive Defendant he could have simply checked no to every condition and Defendant would have had no way of knowing Conto had a significant medical history. (Plt.'s Facts ¶92). Similarly, if Conto only told Defendant in his Form Med-15 that he was taking narcotics because he was passing a kidney stone, and not checked yes to any other medical condition, Defendant would have never learned Conto also took pain medications for his back, because Defendant did not do any follow up on Conto's kidney stones. (Plt.'s Response to Def.'s Facts ¶¶44, 92).

Further, a reasonable jury could find that even if Conto was dishonest, such dishonesty did not actually motivate Defendant's decision not to hire him. First, Dr. Lina contends she did not have sufficient information to claim Conto had been dishonest with the process until after she talked to Dr. Cook. This is patently false. Because Dr. Lina herself contends Conto told her he was taking narcotics for his kidney stones, she would have been aware that representation was false when she received Dr. Cook's letter and records indicating Conto took the medication for back pain. (Plt.'s Facts ¶131-141).

Most importantly, Dr. Lina told both Dr. Cook and Conto that there *might be* a position for Conto if he could get off the narcotic medication for a period of time. Importantly, Dr. Lina told Conto there may be such a job *fifteen* days *after* Defendant contends Dr. Lina recommended that Conto be administratively disqualified for being dishonest in the pre-employment process. A reasonable jury could certainly conclude Dr. Lina did not recommend Conto be rejected for dishonesty in the application process on January 10th, when she told Conto himself on January 25th that he was disqualified for use of prescription medications and a job may be available. It would be curious indeed

for Dr. Lina to suggest a job might still be available for Conto, if she truly believed he had repeatedly lied to her and others in his medical screening and she had already recommended disqualifying for such dishonesty. Such evidence particularly coupled with Defendant's evolving reasons could allow a reasonable jury to conclude that Defendant did not rescind the alleged "conditional offer" due to dishonesty.

**F.    Genuine Factual Issues Exist on Whether Defendant Made an Impermissible Inquiry and Examination.**

An employer cannot, until an offer of employment has been made, "conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability."   42 U.S.C. § 12112(d)(2)(A).   As a result, applicants can shield their private medical information until they know absent an inability to meet the medical requirements, they will be hired, and if they are not hired, the employer's basis for not hiring will be transparent.  Leonel v. American Airlines, Inc., 400 F.3d 702, 711 (9th Cir. 2005).

Defendant argues it had already given plaintiff a conditional/contingent job offer when it required and conducted a medical examination on Conto. (See Def.'s Brief pg. 11). However, an examination of the record highlights a  factual dispute as to whether Defendant actually made a real conditional job offer to Conto.

First, Conto was never given a job offer contingent upon passage of a medical exam after his initial interview.  (Plt.'s Facts ¶62).  Rather, Conto was told Defendant would call if it was interested in him.  (Plt.'s Facts ¶63).  When Defendant did call, Conto was never informed this phone call meant he was being given a job offer contingent on a medical exam. (Plt.'s Facts ¶¶64, 68).  Secondly, Conto was never given a "start date." (Plt.'s Facts ¶74). Third, Defendant's own documents and language controverts its argument that Conto had already received a job offer contingent on the passage of a medical examination.  For example, *after* Conto's medical examination, Defendant still refers to Conto

18

as an "applicant" and references "[h]is 'candidacy' for employment" in letters it sent Conto *after* the medical examination. (Plt.'s Facts ¶¶127, 128). Absent from these letters is any indication Conto had been made a conditional offer. (Plt.'s Facts ¶145).

Although Defendant may argue it made Conto a job offer contingent upon passage of a medical examination, Defendant's argument has conspicuous weaknesses. Although Defendant produces two documents (including a pre-offer application of employment) which use boilerplate "contingent" language, this language and its ramifications were never explained to Conto. *See* (Plt.'s Response to Def.'s Facts ¶ 32). Indeed, Conto did not even understand what the word "contingent" meant as he was unable to even read the word "contingent" during his deposition. (Plt.'s Response to Def.'s Facts ¶ 32). Moreover, this language conflicts with the language Defendant sent to Conto well after his physical exam. Finally, it is highly suspect that Stuart, an agent of the employer, claims he hired an alternate when he learned that Conto was disqualified; however, Stuart cannot even say who he hired when he learned Conto had been administratively disqualified for employment. (Plt.'s Facts ¶ 163). Moreoever Stuart told Conto the positions were filled ***prior*** to Defendant rescinding Conto's alleged conditional offer.  (Plt.'s Facts ¶¶ 156-157, 160).

### 1.      Defendant's "Alleged" Contingent Offer was not a "Real Offer."

Defendant claims it made Conto a conditional job offer after the initial interview. (Plt.'s Facts ¶66).  However, after this alleged  job offer, Defendant informed Conto he still needed to take a physical, a drug test, and have a *police background* check.  (Plt.'s Facts ¶71).  The ADA prohibits medical examinations and inquiries until *after* the employer has made a "real" job offer. Leonel, 400 F.3d. at 708. [8]

---

[8]A job offer is "real" only if the employer has evaluated all relevant non-medical information which it reasonably could have obtained and analyzed prior to giving the offer, or the employer demonstrates that it could not have done so before issuing the offer. Id. at708-09.  Employers cannot make offers conditional on both non-medical and medical contingencies for applicants cannot easily discern or challenge the grounds for revocation.  Id. at 709.

(continued...)

Here, Defendant's alleged offer was contingent on both non-medical, a police background check, and medical components.  Thus, Defendant's alleged offer violated the ADA; it was "not real." Leonel, 400 F.3d at 709. Further, Defendant has not claimed it could not have administered a non-medical, background check before issuing its alleged offer.  Id., 400 F.3d at 708-709.

> **2.      While Defendant now bases its adverse employment action on Conto's alleged dishonesty in its medical process, Defendant's violation of the ADA and subsequent discriminatory conduct of Conto, provides sufficient evidence for a jury to determine that Defendant's basis for rejecting him was pretextual.**

Significantly, the issue is not whether Conto told the truth on his medical questionnaire; but rather,  whether Conto has presented enough evidence to establish that Defendant's proffered reason for its rejection is, in actuality, a pretext an impermissible reason.  Woodell v. United Way of Dutchess County, 357 F.Supp.2d 761, 772 n.14 (S.D.N.Y. 2005).  Defendant, who violated Conto's rights by asking impermissible questions and conducting an impermissible medical exam cannot base its adverse employment decision on the resulting answers, to which it was never entitled.  Downs v. Ma. Bay Transp. Auth., 13 F.Supp.2d 130, 140 (D.Mass. 1998).  Thus, Defendant's impermissible conduct of asking Conto medical questions and conducting a medical exam before making Conto a real conditional offer is sufficient evidence to allow a jury to determine that Defendant's stated legitimate non-discriminatory reason, was, actually, pretextual.  Garrison v. Baker Hughes Oilfield Operations, 287 F.3d 955, 960-61 (10th Cir. 2002).

Since a jury could find that Defendant conducted an impermissible examination/inquiry and rejected Conto because of what it found during that inquiry, summary judgment should be denied with respect to Plaintiff's claim under 42 U.S.C. §12112(d)(2)A.

---

[8](...continued)

Respectfully submitted,

**Ogg, Cordes, Murphy & Ignelzi**

/S/ John E. Black, III
Samuel J. Cordes
John E. Black, III

Pa.I.D. #54874 (Cordes)
Pa. I.D. #83727(Black)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of October, 2006, I  served a copy of ***Plaintiff's Brief in***

***Opposition to Defendant's Motion for Summary Judgment*** via electronic mail upon the following:

Thomas May
Dickie McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222

/S/ John E. Black, III
John E. Black, III